UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JORDAN CUSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-21-427-P |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 1382 ("the Act"). Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

I.   Administrative History and Agency Decision

Plaintiff filed her application for DIB on March 12, 2019, and her application for SSI on August 27, 2019, alleging a disability onset date of June 2, 2018. The claims were denied initially and on reconsideration. Plaintiff and a vocational expert ("VE") appeared and testified at a telephonic hearing before an Administrative Law

Judge ("ALJ") on September 4, 2020. AR 37-60. The ALJ issued an unfavorable decision on October 26, 2020. AR 10-20. After the Social Security Appeals Council denied Plaintiff's request for review, AR 1-6, Plaintiff filed this appeal.

The Social Security Administration ("SSA") has devised a five-step sequential evaluation process to determine disability. *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920). The claimant bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "[she] is not presently engaged in substantial gainful activity," (2) that "[she] has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment or (4) that "the impairment or combination of impairments prevents him from performing his past work." *Williams*, 844 F.2d at 750-51 & 751 n.2; *Grogan*, 399 F.3d at 1261. If the claimant has met her burden of proof through the first four steps, the burden of proof then shifts to the Commissioner to show the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of [her] age, education, and work experience." *Yuckert*, 482 U.S. at 142.

In this case, the ALJ determined Plaintiff met the insured status requirements for DIB through December 18, 2018. SSI benefits, however, would be available

even if Plaintiff were found to be disabled after that date. The ALJ followed the agency's five-step evaluation process to determine whether Plaintiff was disabled within the meaning of the Act. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 13. At step two, the ALJ found Plaintiff had the following severe, medically determinable impairments: myotonic muscular dystrophy, recurrent arrhythmias with syncope, obesity, and dyslexia. AR 13.[1]

At the third step of the sequential evaluation process, the ALJ determined that none of Plaintiff's severe impairments, alone or in combination, met or medically equaled one of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 14-15. At step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except that she can no more than frequently reach, handle, finger, and feel bilaterally. She can no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ropes, ladders, or scaffolds. She needs to avoid exposure to workplace hazards, such as dangerous moving machinery, unprotected heights, open flame, bodies of water, and the operation of any kind of moving vehicle, equipment, or other apparatus. She is limited to three- to four-step repetitive tasks with routine supervision. She can have no more

---

[1] The ALJ noted Plaintiff's non-severe impairments and considered the combined effect of severe and non-severe impairments alike. AR 13.

than frequent interaction with co-workers and supervisors. She is precluded from production-pace work environments.

AR 15. The ALJ determined Plaintiff could not perform her past relevant work as fast-food services manager.

At the fifth step of the sequential evaluation, the ALJ considered Plaintiff's age, her education, her RFC, and the testimony of the VE before concluding there are jobs existing in significant numbers in the national economy that Plaintiff can perform. AR 19. The ALJ identified three such jobs: new account interviewer, information clerk, and addresser. The ALJ determined the testimony of the VE was consistent with the information listed for these jobs in the *Dictionary of Occupational Titles* ("DOT"). AR 20. Accordingly, the ALJ determined Plaintiff was not disabled.

Because the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

The Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401, *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A);

*see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last no less than twelve months. *Barnhart v. Walton*, 535 U.S. 212 (2002).

The Court must determine whether Defendant's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ___ U.S.___, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted).

The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation, quotations, and alteration omitted). The Court must also be mindful that reviewing courts may not create post-hoc rationalizations to explain Defendant's treatment of evidence when that treatment is not apparent from the decision itself. *Grogan*, 399 F.3d at 1263 (citing, *e.g.*, *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

III. Issues

Plaintiff contends the ALJ's RFC is flawed because the ALJ failed to account for the moderate limitations in mental functioning the ALJ identified when he assessed the effects of Plaintiff's dyslexia using the psychiatric review technique ("PRT"). She further argues that her dyslexia would preclude her from performing the jobs identified at step-five of the sequential evaluation.

The Commissioner asserts that neither of Plaintiff's arguments are sufficiently developed. She further contends the ALJ's RFC determination is sound, and the functional limitations caused by Plaintiff's dyslexia would not preclude her from performing the jobs the ALJ identified at step five.

IV. Analysis

A. The RFC

At step three of the sequential evaluation, the ALJ determines whether a claimant's severe impairments meet or equal one of the presumptively disabling impairments listed at Appendix 1 to Part 404 of the regulations. Here, the ALJ evaluated Plaintiff's severe impairments under several listings. Relevant here is the ALJ's evaluation of Plaintiff's dyslexia under the listings for mental impairments. The ALJ found the findings of the State psychological consultants persuasive. AR 18. The ALJ noted that Plaintiff's dyslexia met none of the paragraph A medical

criteria under any listing for mental impairments in section 12.00 of Appendix 1 and that all psychological clinical signs have been essentially normal. AR 14, 17.

> Turning to the claimant's mental impairment, considering that it is dyslexia and that there is nothing in the way of formal testing to assess the severity of this condition, there is little by way of evidence that strictly requires mention here. The undersigned will note, however, that in terms of psychological signs generally, she has had normal mood and affect. Behavior has been normal. Judgment and thought content have been normal. Only mild cognitive difficulties have been noted.

AR 17 (citing AR 374, 486).

Nevertheless, the ALJ evaluated possible functional limitations that could result from Plaintiff's dyslexia under the four broad areas of mental functioning described in paragraph B of each mental listing: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.[2] The ALJ found Plaintiff's dyslexia would moderately affect her ability to function in the first three broad functional areas listed above. But the limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment; rather, they are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 ("[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC

---

[2] The paragraph B criteria are the same for all mental listings in Section 12.00.

assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). *See also Bales v. Colvin,* 576 F. App'x 792, 798 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *4); *Beasley v. Colvin,* 520 F. App'x 748, 754 & n.3 (10th Cir. 2013) (same).

In this case and in spite of the lack of medical evidence, the ALJ gave Plaintiff the benefit of the doubt regarding the possible impact of her dyslexia on her ability to work by finding the paragraph B criteria to be more limiting than did the state psychologists. AR 22. The ALJ reasonably translated the paragraph B findings into specific, concrete work-related functional limitations by restricting Plaintiff to work involving three-to-four step repetitive tasks with routine supervision; no more than frequent interaction with co-workers and supervisors; and no production-pace work environments. AR 15.

Other evidence in the record supports the ALJ's mental RFC. For example, Plaintiff's husband reported that "[h]er dyslexia can give her problems by switching words or letters around" (AR 300), but she could pay attention "all day" and followed written instructions "well" (AR 305). The ALJ accounted for his finding that Plaintiff's dyslexia would result in her completing a reading or writing task more slowly by restricting Plaintiff from production-pace environments. AR 15. Moreover, the ALJ limited Plaintiff to repetitive tasks. A job consisting of repetitive

tasks would, by definition, mean that any reading or writing involved would also be repetitive—accommodating Plaintiff's dyslexia.

The ALJ's mental RFC reasonably accounted for limitations that could possibly result from Plaintiff's dyslexia, and Plaintiff has cited no evidence to the contrary.

  B. Jobs Identified at Step Five

According to Plaintiff, all three jobs the VE identified as representative of jobs Plaintiff could perform "involve a significant amount of reading and writing." Doc. No. 18 at 8-9. She suggests that her dyslexia would preclude her from doing these jobs. Plaintiff cites the definitions of these jobs taken from the DOT. Plaintiff specifically points out that the jobs the ALJ identified at step five have a General Educational Development ("GED") language level of 2. *See* DOT, vol. II, Appendix C, part III, 1991 WL 688702. Each component included in the GED is rated at one of six levels. The higher the scaled level, the more complex the component. *Id.*

Plaintiff has failed to demonstrate, through evidence in the record, that her dyslexia resulted in functional limitations that would preclude her from performing the jobs identified by the ALJ. What is more, as Defendant notes, Plaintiff's past relevant work—fast food service manager—was a semiskilled position with a GED

9

language level of 4.³ Plaintiff testified she had to leave that job—not because of her dyslexia—but because her supervisor would not accommodate her physical impairments by allowing her to sit down when she was in pain. AR 45-46. Additionally, in her Function Report, Plaintiff stated that one of her hobbies was reading mythology books. AR 296. She reported she could follow oral and written instructions "to a 'T.'" AR 297. These statements contradict her current assertion that she could not perform jobs with a GED reading scale of 2-3. Thus, Plaintiff has not sustained her burden of proof through the first four steps of the sequential evaluation by citing to evidence that undermines the ALJ's decision.

V.  Conclusion

Based on the foregoing analysis, the decision of Defendant is affirmed. Judgment will issue accordingly.

ENTERED this   19th   day of April, 2022.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

---

³ *See* DOT#185.137-010, 1991 WL 671285.